UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DEBRA LEDWICK,

                Plaintiff,

vs.                                      Case No.  3:12-cv-1120-J-MCR

CAROLYN W. COLVIN,
Commissioner of Social Security,

                Defendant.
_____/

**MEMORANDUM OPINION AND ORDER[1]**

This case is before the Court on Plaintiff's appeal of an administrative decision denying her application for Social Security benefits. The Court has reviewed the record, the briefs, and the applicable law. For the reasons set forth herein, the Commissioner's decision is **REVERSED** and the case is **REMANDED** for further proceedings**.**

**I.    PROCEDURAL HISTORY**

Plaintiff filed an application for disability insurance benefits ("DIB") and supplemental security income ("SSI") on July 16, 2010, alleging disability as of October 6, 2009. (Tr. 13). She later amended her disability onset date to September 2, 2009. (Tr. 291). Plaintiff's claim was denied initially and on reconsideration. (Tr. 88-94, 156-57). On June 2, 2011, a hearing was held before an Administrative Law Judge ("ALJ"). (Tr. 28-79). The ALJ issued an unfavorable decision on June 17, 2011. (Tr. 10-27).

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 9).

-1-

On August 17, 2012, the Appeals Council denied Plaintiff's request for review. (Tr. 1-9). Therefore, the Commissioner's decision is now ripe for review.

## II. NATURE OF DISABILITY CLAIM

### A. Statement of the Case

Plaintiff was 47 years old at the time of the ALJ's decision. (Tr. 36). She has a high school education and past relevant work as a billing typist, mail clerk and telephone solicitor. (Tr. 36, 67). Plaintiff alleged disability as a result of depression, panic disorder, bipolar disorder and obsessive compulsive disorder. (Tr. 291-92).

The medical evidence contains records from Wekiva Springs where Plaintiff was hospitalized from October 30, 2008 through November 5, 2008 following suicidal ideations. (Tr. 301-13). Upon discharge, she was diagnosed with a moderate to severe major depressive disorder, dysthymia, generalized anxiety disorder, obsessive compulsive disorder and sedative-hypnotic dependence. It was also noted that Plaintiff's prognosis was "limited" for symptomatic recovery and social and vocational rehabilitation. (Tr. 307).

Plaintiff received treatment at Life Counseling Center, Inc. from December 8, 2008 through October 5, 2009. (Tr. 333-55). At that time, Plaintiff exhibited poor insight and motivation, poor insight and judgment, and mild impairment in cognitive functioning. (Tr. 354-55). On February 4, 2009, a mental status examination ("MSE") revealed that Plaintiff was anxious, depressed, sad and tearful with an inappropriate mood and affect. (Tr. 347). On June 3, 2009, similar findings were noted. (Tr. 344). On July 9, 2009, an

MSE stated Plaintiff demonstrated an angry, flat, labile and sad/tearful affect.  (Tr. 343).  An MSE conducted on September 15, 2009 contained similar findings.  (Tr. 335).

On March 18, 2010, treatment records from Thomas Wikstrom, M.D. noted that Plaintiff was experiencing a major depressive affective disorder evidenced by fair judgment, insight, attention, memory and impulse control.  (Tr. 359).  Dr. Wikstrom diagnosed Plaintiff with major depressive affective disorder and panic disorder without agoraphobia.  (Tr. 358).

On May 27, 2010, Plaintiff was hospitalized following suicide attempts by hanging, carbon monoxide poisoning and medication overdose.  (Tr. 381).  Plaintiff's mood was depressed and anxious and she had a Global Assessment of Functioning ("GAF") score of 40.[2]  Upon discharge, Plaintiff was diagnosed with a bipolar affective disorder, mixed.  (Tr. 401).

On October 8, 2010, a mental consultative examination was performed by Allison Keiter, Psy.D., at the Commissioner's request.  (Tr. 411-16).  At that time, Plaintiff reported difficulty sleeping, crying spells, social withdrawal and difficulty functioning.  (Tr. 412).  She also noted obsessive compulsive rituals and visual hallucinations.  (Tr. 412-13).  Dr. Keiter diagnosed Plaintiff with major depressive disorder with psychotic features, obsessive-compulsive disorder and panic disorder with agoraphobia.  Vocationally, Dr. Keiter opined "[Plaintiff] is capable of following and understanding

---

[2]   A GAF score of 40 is defined as "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed adult avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school).  (DSM-IV).

simple directions and instructions. She is capable of performing simple tasks independently. She has difficulty maintaining attention and concentration. She may have difficulty maintaining a regular schedule. She is capable of learning some new tasks. She has difficulty completing complex tasks independently. She has difficulty making appropriate decisions and relating adequately with others. She is not capable of appropriately dealing with stress." (Tr. 415). Dr. Keiter also noted that she recommended an immediate psychiatric intervention and Plaintiff's prognosis was poor. (Tr. 416).

On January 21, 2011, Shands Jacksonville Murray Hill Family Practice treatment notes indicate Plaintiff suffers from bipolar disorder and should be referred for psychiatric treatment. (Tr. 485). On April 18, 2011, it was noted that Plaintiff was experiencing difficulty sleeping, a poor appetite, difficulty getting out of bed, obsessive-compulsive rituals and diminished energy. (Tr. 464-65). An MSE revealed that Plaintiff exhibited a sad expression and reported daily morbid thoughts. At that time, she was diagnosed with bipolar affective disorder and obsessive compulsive disorder. (Tr. 466).

### B.  **Summary of the ALJ's Decision**

A plaintiff is entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months. 42 U.S.C. §§ 416(I), 423(d)(1)(A); 20 C.F.R. § 404.1505. The ALJ must follow five steps in evaluating a claim of disability. See 20

C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  29 C.F.R. §§ 404.1520(b), 416.920(a)(2)(I).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(a)(2)(ii).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. §§ 404.1520(d), 416.920(a)(2)(iii).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. §§ 404.1520(e), 416.920(a)(2)(iv).  Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. §§ 404.1520(f), 416.920(a)(2)(v).  Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In the instant case, at step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date.  (Tr. 15).  At step two, the ALJ found Plaintiff had the following severe impairments: depression, obsessive compulsive disorder and bipolar disorder.  (Tr. 15).  At step three, the ALJ determined Plaintiff did not have an impairment, or any combination thereof, which met or equaled any of the

impairments listed in Appendix 1, Subpart P of the Regulation No. 4. (Tr. 16-17). The ALJ further determined Plaintiff had the residual functional capacity ("RFC")[3] to perform a full range of work at all exertional levels but with the following non-exertional limitations:

> [Plaintiff] is able to perform simple, routine, repetitive tasks. [Plaintiff] is able to concentrate and persist for two-hour segments. [Plaintiff] is limited to work requiring frequent supervision. [Plaintiff] is unable to meet fast-paced high production demands.

(Tr. 17).

At step four, the ALJ found, with the aid of a Vocational Expert ("VE"), that Plaintiff's RFC allowed for the performance of her past relevant work as a mail clerk. (Tr. 20-21). In addition, the ALJ made the "alternate" finding that Plaintiff's RFC would allow for the performance of other work existing in significant numbers in the national economy. (Tr. 20-22). Therefore, Plaintiff was not under a "disability," as defined in the Social Security Act.

## III. ANALYSIS

### A. The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. Richardson

---

[3] The residual functional capacity is the most an individual can do despite the combined effect of all of their credible limitations. 20 C.F.R. §§ 404.1545, 416.945. The residual functional capacity is based on all of the relevant evidence in the case record, and is assessed at step four of the sequential evaluation. Id.

v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### B.     Issues on Appeal

Plaintiff raises the following two issues on appeal: (1) whether substantial evidence supports the ALJ's credibility assessment (Doc. 13, pp. 10-17); and (2) whether substantial evidence supports the weight the ALJ accorded to Dr. Keiter's examining opinion (Id. at pp. 17-25).  The Court will address each of these issues.

**1.      Whether Substantial Evidence Supports the ALJ's Credibility Assessment.**

Plaintiff argues that the ALJ did not properly evaluate her testimony in finding that she was not completely credible. (Doc. 13, pp. 10-17). In response, the Commissioner contends that the ALJ's evaluation of Plaintiff's credibility was consistent with the regulations. (Doc. 14, pp. 6-11).

20 C.F.R. § 404.1529 sets forth how the Commissioner evaluates symptoms reported by a claimant. It notes that "[s]ince symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, we will carefully consider any other information you may submit about your symptoms" including a claimant's reports. The regulation also notes that factors to be considered relevant to the symptoms include: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (v) treatment, other than medication, received for relief of your pain or other symptoms; and (vi) any measures used to relieve pain or other symptoms (e.g., lying flat on back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.). 20 C.F.R. § 404.1529(3).

"In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284

F.3d 1219, 1225 (11th Cir. 2002).  "A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability."  Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995); see also Russell v. Astrue, 331 F. App'x 678, 682 (11th Cir. 2009) (per curiam).

If proof of disability is based upon subjective evidence and a credibility determination is critical to the decision, the ALJ "must articulate explicit and adequate reasons" for rejecting the claimant's allegations.  Foote, 67 F.3d at 1561; Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991) (the reasons articulated by the ALJ must be based upon substantial evidence).  Although "credibility determinations are the province of the ALJ," Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005), "explicit and adequate reasons" must be articulated if the ALJ discredits the claimant's testimony.  Wilson, 284 F.3d at 1225; see also Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005); Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (stating that "after considering a claimant's complaints of pain [or other subjective symptoms], the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence").

While a reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record, as a matter of law the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.  Foote, 67 F.3d at 1561-62; Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988).  Along with a judge's obligation to expressly articulate adequate reasons for discrediting pain testimony, see, e.g., Reeves v. Astrue, 238 F. App'x 507,

514 (11th Cir. 2007) (per curiam), he must consider the factors mentioned in 20 C.F.R. § 404.1529.

Plaintiff contends that the ALJ erred in failing to articulate whether he considered all of her testimony when evaluating her credibility. While the ALJ is not required to include every statement of a claimant in his decision, in the instant matter the ALJ failed to indicate that he considered the testimony that directly addresses the severity of Plaintiff's impairments and her functional limitations. In addition, this testimony may cast doubt upon the reasons for finding Plaintiff's impairments were not as severe as she alleged. For example, the ALJ states that the record "does not support a[n] inability to work" because Plaintiff "has not received the type of medical treatment one would expect for a disabled individual." (Tr. 19). However, in offering this reasoning the ALJ ignores Plaintiff's testimony that she could not afford medical treatment and did not have medical insurance. Similarly, the ALJ reasoned that Plaintiff's testimony that she was able to care for her granddaughter does not support an inability to work. (Tr. 17-18). However, it is unclear whether the ALJ considered the testimony regarding the limited role she plays in this care. (Tr. 43, 47-48, 50, 249-59).

In addition, the ALJ states that the "record does not support a[n] inability to work" because Plaintiff's "activities of daily living are not as limited as one would expect given her complaints." (Tr. 19). However, in reaching this conclusion, the ALJ appears to have selectively chosen certain portions Plaintiff's of testimony without clarifying whether he reviewed all of the testimony or explaining why he ignored testimony that contradicts his findings.

In light of the foregoing, the Court finds that the reasons the ALJ offered for concluding that her testimony was not credible to the extent it was inconsistent with his ultimate RFC determination are not supported by substantial evidence. Thus, Plaintiff's claim shall be remanded for reconsideration of her testimony regarding the severity of her impairments and resulting functional limitations.

### 2. Whether Substantial Evidence Supports the Weight the ALJ Accorded to Dr. Keiter's Examining Opinion.

Plaintiff argues that the ALJ improperly accorded little weight to the opinion of Dr. Keiter, a mental consultative examiner whom was retained by the Commissioner. (Doc. 13, pp. 17-25). In response, the Commissioner contends the weight given to Dr. Keiter's opinion is supported by substantial evidence. (Doc. 14, pp. 11-17).

A claimant's RFC is an assessment based on all relevant evidence of her ability to do work despite her impairments. 20 C.F.R. § 404.1545. The focus of this assessment is on the doctors evaluations of the claimant's condition and the medical consequences thereof. 20 C.F.R. § 404.1527 dictates how the ALJ is required to evaluate medical opinion evidence. 20 C.F.R. § 404.1527(d)(2) provides, in relevant part:

> We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments ..., your [RFC] ..., or the application of vocational factors, the final responsibility for deciding these issues is reserved for the Commissioner.

The ALJ's RFC assessment must always consider and address medical source

opinions. SSR 96-8p. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted. Id. "The opinions of non-examining, reviewing physicians ... when contrary to those of examining physicians are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence." Hoffman v. Astrue, 259 F. App'x 213, 217 (11th Cir. 2007) (internal quotation marks omitted). The judge, though, may reject the opinion of any physician when the evidence supports a contrary conclusion. Bloodsworth, 703 F.2d at 1240.

The Eleventh Circuit has recently reiterated that an ALJ "must state with particularity the weight given to different medical opinions and the reasons therefor." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011). The court went on to note that in the event that an ALJ "fails to state with at least some measure of clarity the grounds for [her] decision" the court will not affirm the decision "simply because some rationale might have supported the ALJ's conclusion." Id. at 1179.

As stated above, Dr. Keiter noted that Plaintiff was experiencing a major depressive disorder with psychotic features, obsessive compulsive disorder and panic disorder with agoraphobia and was limited in her ability to work as follows:

> Vocationally, [Plaintiff] is capable of following and understanding simple directions and instructions. She is capable of performing simple tasks independently. She has difficulty maintaining attention and concentration. She may have difficulty maintaining a regular schedule. She is capable of learning some new tasks. She has difficulty completing complex tasks independently. She has difficulty making appropriate decisions and relating adequately with others. She is not capable of appropriately dealing with stress.

(Tr. 415). Dr. Keiter was the only physician in the medical records who actually examined Plaintiff and offered an opinion as to the severity of her mental impairments and their impact on her ability to meet the demands of work.

The ALJ assigned "little weight" to Dr. Keiter's opinions as "inconsistent with the medical evidence of record" because the record "does not contain the type of significant clinical abnormalities one would expect if the claimant were in fact limited as alleged by the doctor." (Tr. 20). The ALJ does not further clarify the "type of significant clinical abnormalities" he would expect. However, the Court concludes that the record lends some support to Dr. Keiter's opinions. See (Tr. 355-58, 412-16, 465-66).

In addition, the ALJ relies upon the fact that "on December 8, 2008, [Plaintiff] indicated that her twenty-seven year old daughter was dependent on her for 'everything'" as support for assigning "little weight" to the opinions of Dr. Keiter. (Tr. 20). However, this same treatment note contains reports that Plaintiff is depressed, has nightmares, has low energy and motivation, experiences ongoing anxiety, has felt like harming herself, is easily irritable and angry and has racing and obsessive thoughts. (Tr. 351-52). In addition, Plaintiff's alleged onset date is September 2, 2009 and the ALJ relies upon a sentence contained in a treatment note that is dated December 8, 2008 to discredit the October 2010 examining opinion of Dr. Keiter.

In light of the foregoing, the Court cannot conclude that substantial evidence supports the ALJ's rationale for providing "little weight" to the opinions of Dr. Keiter. Thus, on remand, the ALJ shall re-assess the medical opinion evidence from Dr. Keiter

and, if necessary, re-contact Dr. Keiter for a more specific opinion regarding Plaintiff's limitations.[4]

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is hereby **REVERSED** and **REMANDED** to the ALJ with instructions to: (1) reconsider Plaintiff's testimony and credibility; (2) re-assess the medical opinion evidence from Dr. Keiter; and (3) conduct any other proceeding deemed appropriate. The Clerk of the court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

Should this remand result in the award of benefits, Plaintiff's attorney is hereby granted, pursuant to Rule 54(d)(2)(B), an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b), until thirty (30) days after the receipt of a notice of award of benefits from the Social Security Administration. **This order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.**

**DONE AND ORDERED** in Jacksonville, Florida this  26th  day of September, 2013.

Copies to: Counsel of Record

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

---

[4] For clarity, the undersigned is not concluding that Plaintiff has established she is under a "disability" as defined by the Act as the limitations assessed by Dr. Keiter are not specific enough to allow for an adequate evaluation as to their specific impact on Plaintiff's potential employment prospects. However, the Court concludes that the ALJ's explanation for according Dr. Keiter's opinion "little weight" is not supported by substantial evidence.